IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POTBELLY SANDWICH WORKS, LLC, <br> 70 W. Madison Street, Suite 3300 <br> Chicago, Illinois 60602 <br><br> Plaintiff, <br><br> v. <br><br> FARRO ENTERPRISES, INC.; J.D. COGGINS MGMT CO., LLC; J.D. COGGINS SM LLC; COGGINS SANDWICH MANUFACTORY-FAIRFAX, LLC; D/B/A COGGINS' SANDWICH MANUFACTORY, <br><br> Defendants. | Case No.: _____ <br><br> **Jury Trial Demanded** |

## COMPLAINT

For its complaint against Farro Enterprises, Inc., J.D. Coggins Mgmt Co., LLC, J.D. Coggins SM LLC, and Coggins Sandwich Manufactory - Fairfax L.L.C. (collectively "Coggins"), Plaintiff Potbelly Sandwich Works, LLC ("Potbelly" or "Potbelly Sandwich Works"), by and through its attorneys, states as follows:

## NATURE OF ACTION

1. Potbelly Sandwich Works is one of the hottest and fastest growing restaurant companies in America today. After operating for nearly two decades from a single location in Chicago, Potbelly has grown in the last nine years to operate 69 sandwich shops in eight states and the District of Columbia. An integral part of Potbelly's identity and success is the unique look and feel of its shops and the high customer service oriented layout, all of which identify for consumers the source and quality of the products they are purchasing.

2. Potbelly has invested substantial sums in its trade dress in an effort to differentiate itself from other sub or sub-style sandwich restaurants. It is one of very few that limit its offerings to six inch conveyor oven toasted sub-style sandwiches and does so in a

unique, vintage, customer oriented restaurant environment. Others, such as Quiznos and Subway, offer neither a similar restaurant appearance, nor the unique combination of product offerings that has so distinguished Potbelly in the marketplace.

3. Defendants recently opened a restaurant, known as "Coggins Sandwich Manufactory," that copies in fine detail both the unique look and feel of a Potbelly restaurant and its product offerings. Coggins' imitation of Potbelly's distinctive trade dress creates a likelihood of confusion among consumers by causing them to believe, among other things, that: (i) the goods and services Coggins offers originate from, or are prepared under standards set by, Potbelly; (ii) Coggins' store is a genuine Potbelly store; and (iii) Coggins and its goods and services are affiliated with or endorsed by, Potbelly.

4. The close similarities between the Potbelly and Coggins trade dress is no accident. Coggins knew that imitating the distinctive look and feel of Potbelly's stores would help it capture consumer traffic (and revenue) without the investment of time and money necessary to develop a good reputation on its own. The extent of the copying, the fact that Coggins hired a design firm whose predecessor helped design the Potbelly logo, and the decision to open in a market where Potbelly and its distinctive trade dress were already well known (Coggins parent company is based in Ohio, but its first store opened in the Washington metro area, where Potbelly has 15 stores), demonstrate a cynical intent to attract business by confusing the public. It is no surprise that one local newspaper reported "one look at the wooden décor and assembly line behind the counter [at Coggins], and you may feel like you've walked into Potbelly's."

5. Coggins slavishly copied from Potbelly the décor, color scheme, style of furnishings, fixtures, menu appearance and the assemblage and location of various features within the restaurant. The likelihood of consumer confusion created by Coggins' highly similar appearance is compounded by the fact that Coggins also replicates every other significant aspect of the Potbelly customer experience, including: (i) Coggins limits its sandwich offerings to six inch conveyor oven toasted sub style sandwiches; (ii) Coggins offers a virtually identical

selection of drinks, salted snack foods and desserts; (iii) Coggins has replicated the unique sequence of ordering decisions and interactions between customers and store personnel that Potbelly originated; and (iv) Coggins has adopted Potbelly's practice, unique in the sub sandwich business, of charging a single base price for all the sandwiches it sells. Coggins even went so far as to invent and advertise a false "corporate history" that mimics the real story of Potbelly's origin and growth.

6. Potbelly brings this action to prevent further infringement of its unique and distinctive trade dress, and to protect consumers from confusion caused and threatened by Coggins' deceptively similar restaurant design.

## THE PARTIES

7. Potbelly is an Illinois limited liability company with a principal place of business in Chicago, Illinois. Potbelly owns and operates well-known and popular made-to-order sandwich shops under the name POTBELLY SANDWICH WORKS®. Potbelly Sandwich Works has stores in Illinois, Indiana, Michigan, Wisconsin, Minnesota, Texas, Washington, D.C., Virginia, and Maryland.

8. Defendants Farro Enterprises, Inc. ("Farro"), J.D. Coggins Mgmt, LLC, and J.D. Coggins SM LLC are Ohio corporations or limited liability companies. Farro's principal place of business is in Independence, Ohio. Defendant Coggins' Sandwich Manufactory - Fairfax L.L.C. is a Virginia limited liability company with its principal place of business in Fairfax, Virginia. Upon information and belief, defendants own and operate a made-to-order sandwich shop located in Washington, D.C. under the name "Coggins' Sandwich Manufactory." Upon information and belief, Coggins plans to open additional stores in the Washington, D.C. metropolitan area including, specifically, a store in Fairfax, Virginia scheduled to open in February 2005.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Potbelly's Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over Potbelly's

related common law claim under 28 U.S.C. § 1338(b) and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## BACKGROUND

### Potbelly's Distinctive Trade Dress

10. Potbelly's story began in 1977, when the proprietors of a small antique store in the Lincoln Park neighborhood of Chicago decided to bolster their business by offering their customers toasted sandwiches and homemade desserts. Soon, customers were stopping by just to enjoy a sandwich in the store's unusual, antique-filled atmosphere.

11. Over time, the antique-cum-sandwich-shop became an institution in Lincoln Park, attracting by word of mouth visitors from throughout Chicago and points beyond. Potbelly operated from a single location for nearly 20 years until, in 1996, it was purchased by entrepreneur Bryant L. Keil. Keil, who discovered the store when he stopped in for a sandwich and became an avid customer, believed that Potbelly's décor and atmosphere was unique in the industry, and saw expansion potential in the business. He was right. Over the past eight years, Potbelly has grown into one of America's hottest restaurant companies; it currently operates 69 thriving retail locations in Illinois, Washington D.C., Virginia, Michigan, Wisconsin, Maryland, Minnesota, Texas and Indiana.

12. A key ingredient of Potbelly' success is the unique dining environment customers experience in each of its restaurants. Potbelly stores have a "vintage" look that sets them apart from competitors such as Subway and Quiznos. The plastic chair, Formica table and fluorescent lighting formula so common in other sandwich shops is conspicuously absent from Potbelly locations. Instead, each Potbelly Sandwich Works restaurant duplicates the cozy, lived-in charm of the original, through features such as natural wooden and concrete floors, tin ceilings, antique style lighting, vintage signs, black and white vintage photographs, antique style fixtures, and chalkboard menus.

13. Potbelly's distinctive menu design reinforces its old-fashioned, vintage feel. Potbelly menus are printed on non-glossy craft paper stock, and have a large Potbelly Sandwich Works logo on the front. The back side of each menu tells the true story of Potbelly, including its original owners' serendipitous discovery that its toasted sandwiches were delicious enough to sustain the business on their own.

14. Potbelly's product offerings are unique in the industry: no other major restaurant company limits it sandwich offerings to six inch conveyor oven toasted sub-style sandwiches, and has a single base price (currently $3.79 in most stores) for all the sandwiches offered in a particular store. The other food and drink items Potbelly offers, including hand-dipped milk shakes, soups, and homemade cookies, are also unlike any other major sub shop company in America.

15. The customer's experience with Potbelly's ordering process, sandwich preparation, and product packaging are also unique in the sandwich store environment. As customers enter the sandwich-ordering queue, they first encounter a built-in, glass-fronted, self-serve drink cooler housing an unusual variety of canned and bottled drinks. After choosing a drink, customers reach the ordering station, where they choose from a selection of base sandwiches. The ordered sandwich is baked in a conveyor-style oven. While waiting for the sandwich to finish toasting, customers move down the queue and encounter a self-serve "cubby hole" style shelved display of potato chips and pretzels. Next, customers direct the Potbelly associate at the "dressing station" what condiments to apply. The Potbelly associate finishes preparing the sandwich and wraps it. If the customer plans to dine in the store, the sandwich is placed in a plastic basket; if the order is "to go," the sandwich is placed in a plain brown paper "liquor" bag. Finally, customers reach the cash registers, where they can order specialty drinks, such as milk shakes and ice-cream floats, and choose from an assortment of fresh baked cookies and other sweets. Potbelly's dessert offerings are packaged in bags sealed with a sticker.

16. Over the past nine years, Potbelly's fast growing reputation has ensured the success of each of its new locations. In March 2002, Potbelly Sandwich Works opened its

first location outside Illinois, a store in downtown Washington, D.C. The store's popularity grew quickly and enormously, in large part through word of mouth from satisfied customers. Within the year, Potbelly had opened three more stores in Washington, D.C., as well as four additional stores in nearby Virginia and Maryland. Today, Potbelly operates 15 stores in the Washington, D.C. metropolitan area.

17.  Customers repeatedly return to Potbelly, both for the consistently high quality of its fresh, made-to-order toasted sandwiches, and the unique dining atmosphere it provides. Consumers have come to recognize the Potbelly trade dress as a designation of source: when they see this unique look, they understand that the store is a Potbelly location and that it will serve the same quality food at the same great price they have experienced in the past. Potbelly's reputation for excellence follows it to each new geographic area it enters, as word quickly spreads of its freshly-prepared sandwiches, friendly staff, superior service and cozy interiors. Potbelly's decor, menu design, sandwich preparation, ordering process, and product packaging constitute its unique and distinctive trade dress, which has developed secondary meaning among consumers.

18.  Potbelly uses a logo comprised of concentric green, black and red circles. The green outer band is outlined with a black jagged edge resembling a gear or cog, and contains the words "SANDWICH WORKS" in capital letters. The red inner circle is outlined in black and contains a central illustration of an old-fashioned, potbelly stove. The word "Potbelly" appears diagonally across the circular logo in a large, fanciful yellow serif font that laps over the edges of the logo. A copy of the Potbelly Sandwich Works logo is depicted below:

19. To assist in the creation of the design of Potbelly's logo and graphics, Potbelly hired Chicago-based Lieber Cooper Design, a predecessor to the design firm now known as Marve Cooper Design.

### Coggins' Sandwich Manufactory's Infringing Activities

20. In 2004, Coggins opened in Washington D.C., less than a mile away from Potbelly's L Street and Pennsylvania Avenue locations. Upon information and belief, Coggins plans to open additional locations in the Washington, D.C. metropolitan area, including a store in Fairfax, Virginia, where Potbelly already has a location. Upon information and belief, the Fairfax, Virginia Coggins location is scheduled to open in February 2005.

21. Like Potbelly Sandwich Works, Coggins' Sandwich Manufactory offers made-to-order, toasted sandwiches. However, the similarities do not end there:

- Coggins has copied a variety of design features that contribute to the unique vintage look of Potbelly stores, including natural wooden and concrete floors, a tin ceiling, similar lighting fixtures, signs with a vintage look, black and white vintage photographs, and chalkboard-style menus.

- Coggins has adopted a single base price for all of its sandwiches that is nearly identical to Potbelly's.

- Coggins has replicated the old-fashioned, vintage feel of Potbelly's paper menus. Coggins' menus are printed on paper stock that is similar in size, color and texture to those of Potbelly, and bear similar design elements, including a circular logo on the front and a "history" of the company on the back. In Coggins' case, however, the history is phony. Though the first Coggins store was opened only a few months ago, its menus falsely suggests a long history and humble beginnings that parallel the true story of Potbelly's.

- Coggins has placed fixtures within its store that replicate the unique experience of Potbelly's ordering process, sandwich preparation, and product packaging. The sequence of the ordering process is virtually identical,

including the unusual initial placement of the built-in, glass-fronted, self-serve drink cooler, the ordering station at which the customer first interacts with a store employee, the loading of the customer's selection into a conveyor-style oven; the exposure of the customer to a cubby hole shelved display of potato chips and pretzels; the dressing station; the cash register and the dessert and prepared beverage selection.

- Coggins uses similar serving and wrapping materials, including, for "to go" orders, a similarly sized plain brown paper "liquor" bag and, for in-store dining, a basket into which sandwiches are placed.

- Coggins has adopted a logo that contains many design similarities to the well-known Potbelly logo. Coggins' design is comprised of a thick outer band surrounding a central circle containing a central design element. Like the Potbelly Sandwich Works logo, the Coggins Sandwich Manufactory logo prominently features the colors yellow and red. Like the Potbelly logo, the outer band of the Coggins logo is outlined with a black jagged edge resembling a gear or cog, and the inner circle is also outlined in black. Between the outer and inner circle the words "SANDWICH MANUFACTORY" appear in all capitals, like the words "SANDWICH WORKS" in the Potbelly Sandwich Works logo. The name "Coggins'" appears diagonally across the circular logo in a fanciful, yellow serif font that laps over the edges of the outer band of the logo in a fashion that is nearly identical to the word "Potbelly" on the Potbelly Sandwich Works logo. A copy of the Coggins logo is depicted below:



22. Coggins adopted the foregoing trade dress and logo long after Potbelly's trade dress and logo had become well known among consumers.

23. The similarities described above are not coincidental. On information and belief, Coggins hired Chicago-based Marve Cooper Design—a successor to the Lieber Cooper Design firm that had previously done design work for Potbelly—as a design consultant. Upon information and belief, Coggins hired Marve Cooper Design to help imitate more closely Potbelly's distinctive trade dress and to trade on its goodwill by confusing and misleading consumers. Coggins personnel also made multiple visits to Potbelly stores, taking photos and notes of its unique look.

24. Coggins' imitation of Potbelly's distinctive trade dress creates a likelihood of confusion among consumers by causing them to believe, among other things, that: (i) the goods and services Coggins offers originate from, or are prepared under standards set by, Potbelly; (ii) Coggins' store is a genuine Potbelly store; and (iii) Coggins and its goods and services are affiliated with or endorsed by, Potbelly.

25. Potbelly has demanded that Coggins cease its use of trade dress that infringes the distinctive Potbelly trade dress, but Coggins has refused to do so. Absent relief from this Court, Potbelly is informed and believes that Coggins will continue to infringe its trade dress, expand its use of the infringing trade dress to other locations, and will irreparably harm the goodwill that Potbelly's trade dress has achieved to date.

## COUNT I

### Trade Dress Infringement, Lanham Act § 43(a) (15 U.S.C. § 1125(a))

26. Potbelly repeats and realleges the allegations of paragraphs 1 through 25 above as though fully set forth herein.

27. Potbelly's distinctive decor, menu design, sandwich preparation, product packaging, and ordering process constitute non-functional, protectable trade dress.

28. Coggins has infringed and continues to infringe on Potbelly's trade dress rights through the imitation in interstate commerce of Potbelly's decor, menu design, sandwich preparation and ordering process and product packaging.

29. On information and belief, Coggins' has replicated Potbelly's trade dress for the purpose of causing, and such replication is likely to cause, confusion, mistake, or deception as to the source, affiliation, connection, or association of Coggins' store with Potbelly and the individual sandwich shops it operates.

30. Coggins' infringement is willful, deliberate, and intentional.

31. As a result of Coggins' wrongful conduct, Potbelly has been damaged and will continue to be damaged in an amount to be determined at trial. Potbelly has suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law unless this Court enjoins the wrongful activities of Coggins.

## COUNT II

### Unlawful Trade Practices, District of Columbia Consumer Protection Procedures Act (D.C. Code §28-3901 et seq.)

32. Potbelly repeats and realleges the allegations of paragraphs 1 through 25 above as though fully set forth herein.

33. The District of Columbia Consumer Protection Procedures Act, D.C. Code section 28-3904, among other things, prohibits "any person to . . . (s) pass off goods or services as those of another."

34. Through their foregoing wrongful acts, Coggins has violated the D. C. Consumer Protection statute.

35. As a result of Coggins' wrongful conduct, Potbelly has been damaged and will continue to be damaged in an amount to be determined at trial. Potbelly has suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law unless this Court enjoins the wrongful activities of Coggins.

## COUNT III

## Common Law Unfair Competition

36. Potbelly repeats and realleges the allegations of paragraphs 1 through 25 above as though fully set forth herein.

37. Coggins' conduct constitutes unfair competition under the common law of the District of Columbia.

38. As a result of Coggins' wrongful conduct, Potbelly has been damaged and will continue to be damaged in an amount to be determined at trial. Potbelly has suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law unless this Court enjoins the wrongful activities of Coggins.

## PRAYER FOR RELIEF

WHEREFORE, Potbelly prays as follows:

1. That defendants and their respective officers, agents, servants, employees, attorneys, and all those in active concert or participation with them, be preliminarily and permanently enjoined from:

   a. Using an imitation or substantially similar decor, menu design, sandwich preparation, product packaging, and ordering process as those that are distinctive to Potbelly and are associated with Potbelly in the minds of consumers;

   b. Doing any other act or thing likely to induce the mistaken belief that defendants' goods or services are in any way affiliated, connected, or associated with

Potbelly or its goods and services, or doing any other act or thing likely to cause confusion with respect to Potbelly's trade dress; and

      c.     Unfairly competing with Potbelly in any manner whatsoever.

2.     That Potbelly be awarded monetary relief in an amount to be determined at trial.

3.     That Potbelly be awarded reasonable attorneys' fees pursuant to D.C. Code § 28-3905 (k)(1)(B).

4.     That, because of the exceptional nature of this case resulting from defendants' deliberate unlawful actions, this Court award to Potbelly treble damages and all reasonable attorneys' fees, costs, and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. § 1117.

5.     That Potbelly be awarded, to the extent appropriate, exemplary damages in an amount to be proved at trial.

6.     That the Court award such further legal or equitable relief as it deems just and equitable.

7.     A jury trial is demanded.

Respectfully submitted,

_____
Matthew Kirtland
D.C. Bar No. 456006
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

John C. Rawls
California State Bar No. 106567
Sarah Silbert
California State Bar No. 198594
FULBRIGHT & JAWORSKI L.L.P.
865 South Figueroa St., Suite 2900
Los Angeles, California  90017-2576
Telephone:  (213) 892-9200
Facsimile:  (213) 680-4518

ATTORNEYS FOR PLAINTIFF
POTBELLY SANDWICH WORKS L.L.C.